UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


JOHN DOE                                    CIVIL ACTION

v.                                          NO. 18-6880

LOYOLA UNIVERSITY                           SECTION "F"


<u>ORDER AND REASONS</u>

Before the Court are two motions: (1) Loyola University New Orleans's motion for summary judgment; and (2) John Doe's motion to extend discovery deadlines.   For the reasons that follow, Loyola's motion is GRANTED, and Doe's motion is DENIED.

**Background**

This Title IX lawsuit arises from a former law student's claim that he was wrongfully expelled after the university conducted allegedly insufficient and discriminatory disciplinary proceedings during which he was twice found responsible for "dating violence" in violation of the university's code of conduct.

Loyola University New Orleans publishes a Code of Conduct establishing expectations of personal conduct; it is available in writing and on the University's website.

> It is the intention of this Code of Conduct to classify standards of behavior essential to the University's educational mission and community life.  The Code is applicable  to  all  Loyola  students;  equally  it  is

1

> applicable to recognized student organizations and/or groups of students.
>
> By accepting admission to Loyola University New Orleans, a student/student organizations accepts its rules and acknowledges the right of the University to take conduct action, up to and including suspension or dismissal.

The Code allows any person to submit a complaint against a member of the Loyola community, regardless of the complainant's affiliation with Loyola. The Code expressly distinguishes Loyola's student conduct process from judicial processes. The Code sets forth the student conduct hearing procedures and the due process available to students under those procedures, including the right to written notice, a hearing, and to appeal adverse decisions or sanctions.

According to the Code, a student conduct hearing is an opportunity for the accused to hear the allegations, enter their statement in defense, and deny or accept responsibility. The accused and complainant must submit their questions in advance of the hearing; those questions are asked by the presiding hearing officer. The accused and complainant are prohibited from asking questions directly to another hearing participant. If the disciplinary decision is dismissal, any appeal taken is reviewed by the Vice President for Student Affairs and the University President.

In 2015, John Doe enrolled as a part-time night student at Loyola University Law School in New Orleans.    Thereafter, consecutive complaints by two non-student women with whom Doe had been dating proceeded through the student conduct process, after which Doe was found responsible for violations of the Loyola University New Orleans Code of Conduct; specifically, he was twice found responsible for "dating violence."   Doe received written notice of each complaint, he opted for hearings which were conducted, and he was provided (and he exercised) his right to appeal.   Ultimately, he was dismissed from the University.

The first complaint was lodged by Jane Roe 1 on March 1, 2016. Jane Roe 1 reported to Loyola that Doe physically attacked her, hacked her online accounts, and damaged her property.   Doe admits he was informed of the complaint by the University and that he asked Loyola to ban Jane Roe 1 from campus; it did so.   This first complaint proceeded through an investigative process to a hearing, resulted in a finding of "responsible" for both "dating violence" and "conduct unbecoming a Loyola student," and culminated in sanctions including mandatory counseling and disciplinary probation through August 1, 2017.[1]   As a condition of probation, the University's written determination warned Doe that Loyola

---

[1] Doe was found "not responsible" for stalking, computer and internet policy violation, and property damage.

could take more severe disciplinary action, including "immediate removal from the University" if another incident occurred during the probationary period.

During this probationary period, a second complaint was lodged by Jane Roe 2 on March 10, 2017. Jane Roe 2 reported to Loyola that Doe physically, psychologically, and verbally abused her, harassed her online, and sexually assaulted her. In connection with a temporary restraining order petitioned by Jane Roe 2 and issued by state court process, Doe was arrested for possessing a firearm in violation of the temporary restraining order. Meanwhile, the Student Conduct Office proceeded with investigating the Jane Roe 2 complaint.

John Doe met in person with Loyola University's then-Assistant Vice President of Student Affairs Robert Reed to discuss this second complaint.[2] On May 15, 2017, John Doe received an email Notice of Conduct Hearing letter, which informed him that the University's investigation was complete and he was being charged under the Code with dating violence, sexual assault, sexual battery, and stalking in the Jane Roe 2 matter. Doe did not

---

[2] John Doe testified that he had recently been arrested by state authorities for possession of a firearm in violation of a state-court-issued temporary restraining order petitioned by Jane Roe 2 and therefore he assumed that the second complaint was lodged by Jane Roe 2.

respond to the May 15, 2017 letter.  On June 2, 2017, Loyola re-
sent the Notice of Conduct Hearing letter, providing Doe with
additional response time for him to elect how he wished to proceed.
Doe elected to proceed with a University Board of Review hearing.
On June 13, 2017, Doe received a letter informing him of the
hearing date and directing him to the Student Code of Conduct and
Board of Review Disciplinary Procedures.  That same day, Doe
received an email containing a Dropbox link containing case
information, materials, and videos.  Three days later, Loyola
reminded Doe by email as to his deadline for submission of material
for a Board of Review hearing.  At Doe's request, the deadline for
submission of materials and to provide witness information was
extended to June 21, 2017.  By June 23, 2017, Doe still had not
provided contact information for his witnesses; consequently, Doe
was advised that any witnesses he had could not testify in person
at the hearing.  Loyola advised Doe to have any witness statements
submitted by June 26, 2017.  The statements were submitted.

On June 27, 2017, Doe met with Loyola student conduct officer
Nikolina Camaj to review the Board of Review hearing procedures.
Doe was advised that his character witnesses were added to the
case file and that his parents would be allowed to testify during
the hearing.  Doe was also informed that Jane Roe 2 would be
participating in the hearing by telephone because the temporary

restraining order restricting contact between Roe 2 and Doe was still in place.

On June 29, 2017, Doe, with counsel present, participated in the Board of Review hearing.   Doe submitted evidence into the record for the Board's review.  Doe admits that he understood the Code of Conduct rules, but he noted that he "didn't agree with them."   Doe was ultimately found "responsible" for "dating violence" and "persistent misconduct and conduct unbecoming" and was dismissed from the University effective July 10, 2017; in addition to providing Doe with information and deadlines concerning any appeal he may lodge, the July 10, 2017 Notice of Determination letter stated:

> As a result of the University Board of Review hearing June 29, 2017, the following recommendations were made and approved by the Vice President of Student Affairs.
>
> **Charges**
> Dating Violence -- Responsible
> Sexual Assault -- Not Responsible
> Sexual Battery -- Not Responsible
> Persistent Misconduct -- Responsible
> Stalking -- Not Responsible
> Conduct Unbecoming – Responsible
>
> **Sanctions**
> As allowed by the provisions of the Student Handbook, the following sanctions are being enforced. Read the following information carefully, paying close attention to due dates and penalties.
>    1. Dismissal – You are hereby dismissed from Loyola University New Orleans effective July 10, 2017. Dismissal is the permanent termination of your student status. You are not allowed on campus.  If

you need to be on campus during the business day
for official business, you must receive advanced
approval from The Office of Student Affairs.
<u>Student Handbook, Section 5: XII.</u>

**<u>Additional Sanction Information</u>**
The aforementioned sanctions have gone and will remain
in effect if the appeals deadline passes without
submission OR the appeals process has concluded and a
decision letter has been issued.

**<u>Rationale</u>**
...
The Board's decision was based on the following:
Dating Violence – there was a preponderance of evidence
that Mr. John Doe abused Ms. Jane Roe 2 both physically
and sexually.  This decision was based on her statements,
photos, and evidence submitted to the courts to obtain
the restraining order.
Persistence Misconduct – this is the second offense of
this same type of complaint within the year.
Conduct Unbecoming of a Loyola Student – in addition to
persistence misconduct, he was also arrested which is in
violation of his disciplinary probation.
...

Doe did not open the Notice of Dismissal until July 14, 2017 when

he emailed Ms. Camaj, requesting additional time to appeal.  Ms.

Camaj extended the July 18, 2017 appeal deadline to July 21, 2017.

Doe appealed.   He argued that the sanction was inappropriate

because he had not been found responsible for sexual violence,

rape, or sexual assault.  Consistent with the Code of Conduct's

requirement that in cases of dismissal, the appeal is to the Vice

President for Student Affairs and then the University President,

then-Vice President of Student Affairs Dr. Cissy Petty and then-

President of Loyola University Dr. Kevin Wildes, S.J. considered Doe's appeal.  On July 22, 2017, Loyola denied the appeal and upheld the determination of the Review Board and sanction of dismissal effective July 10, 2017.

On July 20, 2018, Doe sued Loyola University New Orleans, alleging a claim under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, a civil rights claim under 42 U.S.C. § 1983, and various state law causes of action sounding in tort and contract.[3]  Counsel for each party participated in a scheduling conference to select mutually agreeable deadlines for this case. On May 23, 2019, the Court issued a scheduling order memorializing the jury trial date (March 16, 2020) and selecting various deadlines.  For example, the parties agreed, and this Court ordered, that witness and exhibit lists must be filed by December 26, 2019[4] and that "[d]epositions for trial use shall be taken and all discovery shall be completed no later than January 30, 2020." This Court's scheduling order also provides:

> Deadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon a timely motion filed in compliance with the Local Rules and upon a showing of good cause.

---

[3] Doe sued individual defendants, but his claims against them were dismissed for failure to state a claim.

[4] To date, Doe has not submitted his witness or exhibit list.

In compliance with the scheduling order's requirement that pretrial motions must be filed and served in sufficient time to permit hearing no later than February 5, 2020, the defendant filed a motion for summary judgment on January 21, 2020 and selected the February 5, 2020 hearing date.  The Local Rules' deadline for filing an opposition came and went.  On February 6, 2020, the Court issued an order providing the plaintiff with additional time to respond to the motion for summary judgment.[5]  Meanwhile, the plaintiff filed a motion seeking to compel discovery responses that he says he needs "in order to effectively depose the Defendant in this case and prepare for trial[.]"  Prepared to turn over the requested discovery, the defendant moved for entry of a protective order.  On February 19, 2020, Magistrate Judge Douglas granted in part the plaintiff's motion to compel "to the extent that the motion for protective order is granted as unopposed" and ordered the parties to submit the protective order no later than February 20, 2020, and ordered that "[o]nce this Court has entered the protective order in the record, Loyola shall produce the documents to plaintiff no later than seven (7) days from said date."  The

---

[5] The plaintiff ultimately filed its opposition paper one day after the new deadline ordered by the Court.  Plaintiff's counsel failed to comply with this Court's order that counsel must certify in the record that a copy of its February 6, 2020 order was provided to his client.

magistrate judge also denied the plaintiff's request for fees and costs "as Loyola's refusal to produce the documents was substantially justified by plaintiff's intransigence."[6]  The defendant filed the joint motion for protective order on February 20, as ordered; the protective order was entered by the magistrate judge a week later on February 27, 2020.

The Court now considers Loyola's motion for summary judgment.

I.
*A.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

---

[6] Notably, the magistrate judge observed that:
   [P]laintiff seeks documents from defendant, who is – and always has been – prepared to produce the documents subject to a protective order.  While plaintiff did not formally oppose Loyola's motion for a protective order, in his motion to compel, he argues that "[t]he constraints of the protective order proposed by the Defendants are such that anyone would not be able to adhere to except staff trained to do so, none of which are employed by undersigned."  As Loyola points out, however, the protective order submitted by it is – essentially – the same order posted on this Court's website by another Magistrate Judge in this Court and which is commonly used by counsel and parties in all types of lawsuits in this Court.... [B]oth [parties] agree that there are confidential aspects to the documents.

fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31

11

F.3d 344, 346 (5th Cir. 1994)("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

*B.*

The Court may deny summary judgment and extend discovery if the party opposing summary judgment shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Jacked Up, L.L.C. v. Sara Lee Corp., 854 F.3d 797, 816 (5th Cir. 2017)(citing Fed. R. Civ. P. 56(d)). Rule 56(d) motions are routinely granted if the party filing the motion demonstrates how additional discovery will create a genuine issue of material fact and if the party has

diligently pursued discovery.  <u>See</u> <u>id.</u> (citing <u>Smith v. Reg'l</u>
<u>Transit Auth.</u>, 827 F.3d 412, 422-23 (5th Cir. 2016) and <u>McKay v.</u>
<u>Novartis Pharm. Corp.</u>, 751 F.3d 694, 700 (5th Cir. 2014)).  The
Rule 56(d) movant "may not simply rely on vague assertions that
additional discovery will produce needed, but unspecified facts."
<u>Am. Family Life Assur. Co. of Columbus v. Biles</u>, 714 F.3d 887, 894
(5th Cir. 2013)(citation omitted).  Rather, the party seeking
additional time and discovery to oppose summary judgment "must
'set forth a plausible basis for believing that specified facts,
susceptible of collection within a reasonable time frame, probably
exist and indicate how the emergent facts, if adduced, will
influence the outcome of the pending summary judgment motion.'"
<u>Jacked Up, L.L.C.</u>, 854 F.3d at 816 (citation omitted).

<em>C.</em>

Local Rule 56.1 provides that "[e]very motion for summary
judgment must be accompanied by a separate and concise statement
of the material facts which the moving party contends present no
genuine issue."  Local Rule 56.2 provides:

> Any opposition to a motion for summary judgment must
> include a separate and concise statement of the material
> facts which the opponent contends present a genuine
> issue.  All material facts in the moving party's
> statement will be deemed admitted, for purposes of the
> motion, unless controverted in the opponent's statement.

13

II.
*A.*

First, the Court considers a threshold issue of whether summary judgment is premature.  The plaintiff submits that he should be afforded more time for discovery.  The defendant counters that the plaintiff has failed to show good cause to excuse his failure to timely pursue discovery.  The Court agrees.  Because the defendant filed its motion for summary judgment at the last possible time permitted by the scheduling order and the plaintiff failed to diligently pursue discovery, summary judgment should not be delayed.  What's more, the plaintiff has failed to submit any sworn statement specifying how adducing certain facts will influence the outcome of Loyola's motion for summary judgment.

The plaintiff moves to extend the discovery cutoff, which expired on January 30, 2020.  He fails to show good cause.  Curiously, the plaintiff suggests that discovery has only recently begun in this case.  In fact, Doe filed this lawsuit on July 20, 2018, a scheduling order issued on May 23, 2019, and Loyola filed its first motion to compel discovery responses on July 16, 2019 (the motion was ultimately granted as unopposed).  Whether the plaintiff has chosen to participate or not, discovery has been ongoing for at least eight (if not 17) months.  The record shows that the plaintiff himself failed to diligently pursue discovery,

14

whereas Loyola has continued to cooperate and disclose information belatedly sought by the plaintiff, in spite of the lapse of the discovery deadline.[7]   The plaintiff's motion to extend the discovery deadline fails for lack of good cause.

Doe's inability to show that he diligently pursued discovery likewise dooms his Rule 56(d) motion for additional discovery and a continuance.  Not only does the plaintiff fail to demonstrate how he diligently pursued discovery (indeed, the record is to the contrary), but he also fails to submit an affidavit in support of the motion or explain how additional discovery will create a genuine issue of material fact for trial.[8]  The plaintiff's motion to extend the discovery deadline must be denied. And insofar as he implicitly requests an extension of time to oppose the motion for summary judgment, the request is denied for failure to comply with Rule 56(d).

---

[7] Instead of attempting to show good cause to excuse his belated attempts to obtain discovery, Doe casts aspersions that are belied by the record: he submits that Loyola has "purposely tried to run out the clock and force the Plaintiff into signing a Protective Order that is so confining, that Plaintiff's counsel has no other choice but refusing it" and he submits that "Plaintiff's counsel believes that the protective order was deliberately written so constrictive as to ensure failure to comply resulting in the Plaintiff being found in contempt of court."  His arguments proved to be false theater and were rejected by the magistrate judge. See Order dtd. 2/19/20.

[8] Even having ostensibly obtained the information he belatedly sought, the plaintiff has not supplemented his opposition papers or the summary judgment record.

*B.*

Second, the Court takes up the issue of whether the factual assertions contained in the defendant's statement of undisputed material facts should be deemed admitted.  The defendant contends that the plaintiff failed to properly controvert its statement of undisputed material facts in three ways: first, the plaintiff failed to address certain uncontested facts (including numbers 1, 3, 5, 7, 11-17, 19-20, 22-26, and 28-31); second, the plaintiff failed to controvert certain facts, including his employment history (#2), multiple arrests (#4), that Loyola's code of conduct prohibits direct questioning of each other by the complainant and the accused (#9), the procedure set forth in the code for appeals in dismissal cases (#10), whether he responded to the May 15, 2017 letter (#18), and that he received a Dropbox link (#21); and third, the plaintiff suggests that some facts are disputed but fails to acknowledge uncontroverted documents in the record, including that the Code does not limit its jurisdiction to complaints brought by members of the Loyola community and explicitly sets forth the student conduct hearing procedures and due process requirements (#6 and #8, <u>see</u> Rec.Doc. 33-9), the date of the plaintiff's dismissal (#27, <u>see</u> Rec.Doc. 33-3), and the date the plaintiff filed his lawsuit (#32, <u>see</u> Rec.Doc. 1).  The Court agrees.

Indeed, the plaintiff candidly admits he cannot controvert these facts.[9]

Because the plaintiff failed to controvert any of these facts (numbers 1 through 32, which is the entire statement of undisputed material facts), Local Rule 56.2 requires that they be deemed admitted.

### III.

Loyola first seeks summary judgment in its favor dismissing the plaintiff's Title IX, Section 1983, and state tort law claims on prescription grounds.  In his tardy opposition, the plaintiff fails to mention the statute of limitations, which dooms all but one of his claims.[10]

Neither Title IX nor Section 1983 contain an express limitations period.  Both sorts of claims are governed by the state statutes on prescription for personal injury actions.  See King-White v. Humble Indep. Sch. Dist., 803 F.3d 754, 759 (5th Cir. 2015).  In Louisiana, delictual actions are subject to a one-year

---

[9] The plaintiff admits: "Defendant's summary judgment motion contains a lengthy 'Statement of Undisputed Fact,' which is based upon declarations and a number of attached exhibits.  Without the time and the opportunity for discovery, Plaintiff cannot contest these facts." As discussed above, the plaintiff has failed to demonstrate that he lacked the opportunity or time to participate in discovery.

[10] The one claim that is not subject to a one-year prescriptive period is the plaintiff's breach of contract claim, which is addressed separately.

prescriptive period, which runs from the day the injury is sustained. La. Civ. Code art. 3492. Thus, Doe's Title IX, Section 1983, and tort claims are subject to a one-year prescriptive period.

The operative date from which the limitations period runs is the day injury or damage is sustained, La. Civ. Code art. 3492, or, more precisely here, "the date of the notice of the adverse action." See Hartz v. Admr's of the Tulane Educ. Fund, 275 Fed.Appx. 281, 287 (5th Cir. 2008)(regardless of the pendency of grievance procedures, charging period began to run when plaintiff received notice that she was denied tenure). The focus is on when the plaintiff is aware of the injury: "[a] claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." King-White, 803 F.3d at 762 (internal citations omitted). This is so notwithstanding the availability of grievance procedures such as an opportunity to appeal the decision causing the injury; that is, claims must be filed within the prescriptive period from the date of notice of the original decision. See Delaware State College v. Ricks, 449 U.S. 250, 256 (1980)("the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period. The existence of

careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made."); <u>Sanders v. Univ. of Tex. Pan Am.,</u> 776 Fed.Appx. 835, 837 (5th Cir. 2019)(quoting <u>Ricks</u>, 449 U.S. at 258)(internal alterations omitted)).

In other words, if the plaintiff challenges a decision, the clock on his claim starts to run when the decision is made and communicated to the injured party. This principle applies equally to student dismissal decisions. <u>See</u>, <u>e.g.</u>, <u>Tolliver v. Prairie View A&M Univ.</u>, No. 18-1192, 2018 WL 4701571, at *2-3 (S.D. Tex. Oct. 1, 2018)(granting defendants' motion to dismiss Title IX, § 1983, and state law tort claims as time-barred and finding that expelled student's request to overturn expulsion did not delay the accrual of his claims arising from the expulsion); <u>Oirya v. Auburn Univ.</u>, No. 17-681, 2019 WL 4876705, at *11-15 (M.D. Ala. Oct. 2, 2019)(dismissing Title IX claim as time-barred, determining that statute of limitations began to run on the date the plaintiff was informed that he was dismissed from the university, and rejecting the plaintiff's argument that the university's willingness to review its decision and allow him to reapply implicates the continuing tort doctrine), *appeal filed* November 4, 2019; <u>Cordova v. Univ. of Notre Dame Du Lac</u>, 936 F. Supp. 2d 1003, 1011 (N.D. Ind. 2013)(granting university's motion to dismiss student's

claims challenging dismissal from university, finding that the claims accrued when the plaintiff received notice of expulsion, notwithstanding the plaintiff's appeal of that decision).

Here, the Board of Review issued its "dismissal" determination on July 10, 2017. It is not disputed that the limitations period commenced no later than July 14, 2017, when the plaintiff unequivocally had notice of his dismissal.[11] Doe filed this lawsuit more than one year later, on July 20, 2018. Doe's Title IX, § 1983, and each of his state-law tort claims are therefore time-barred.[12]

IV.
*A.*

Loyola next submits that it is entitled to summary judgment dismissing each of the plaintiff's claims on the merits.

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." Plummer v. Univ. of Houston, 860 F.3d 767, 772 (5th Cir. 2017)(quoting Wood v. Strickland, 420

---

[11] The record shows that Doe received an email with a link to the determination letter on July 11, 2017, but it was three days later on July 14, 2017 when the plaintiff first responded to the email and confirmed that he opened the determination letter.
[12] Doe cites no law or fact that would alter this outcome. In fact, he does not address Loyola's statute of limitations defense at all.

U.S. 308, 326 (1975)).   The judiciary is tasked not with determining whether a university made the correct decision in rendering discipline in a misconduct case, but, rather, to ensure that the university relied on "fundamentally fair procedures to determine whether the misconduct has occurred." Id. (quoting Goss v. Lopez, 419 U.S. 565, 574 (1975)).

To be sure, the Court need not consider the merits of Doe's prescribed claims.  Nevertheless, in the interest of completeness, the Court observes that the plaintiff fails to mention six of his claims in his opposition papers: detrimental reliance, negligent infliction of emotional distress, gross negligence, and claims under Title IX for selective enforcement, erroneous outcome, and deliberate indifference violations.   In addition to being prescribed, Loyola's well supported motion including its statement of undisputed facts (which is deemed admitted), coupled with the plaintiff's failure to invoke any case literature or to submit or identify any evidence in the record to support his claims, demonstrates that Loyola is entitled to judgment as a matter of law dismissing these claims.

*B.*

The plaintiff briefly addresses two claims in his opposition paper: (1) Loyola violated due process owed under 42 U.S.C. § 1983;

and (2) Loyola breached a contract.   Neither claim withstands Loyola's motion for summary judgment.

### 1.   42 U.S.C. § 1983

The Court has already determined that the plaintiff's § 1983 claim is prescribed.   Even assuming it were viable, summary judgment in favor of Loyola is warranted because the plaintiff has failed to submit any evidence in support of an essential element of his claim.

Loyola is a private, non-profit corporation not clothed with state action and does not act under the color of state law.   Boutin v. Loyola Univ., 506 F.2d 20, 21 (5th Cir. 1975)(per curiam). Because Loyola is not a state actor nor is there any evidence that it was engaged in state action in disciplining Doe, the plaintiff's § 1983 claim must be dismissed on summary judgment for the additional reason that the plaintiff has not proved the essential state-action element of his § 1983 claim.

### 2.   Breach of Contract

Finally, Loyola seeks summary relief dismissing the plaintiff's breach of contract claim.   Loyola submits that Doe's breach of contract claim, however characterized,[13] targets the

---

[13] Loyola characterizes Doe's breach of contract claim as a laundry list of allegations, including Loyola's alleged failure to have a fair and impartial disciplinary process, its failure to conduct an unbiased investigation, its failure to complete the investigation

content of the Code of Conduct and is belied by the plaintiff's own testimony.   The plaintiff submits that he and Loyola entered into a contract in which he paid Loyola money for his education and, in return, Loyola contracted to provide him with access to its student life program in accordance with the 2015-2016 student handbook.  He invokes no substantive law, nor does he single out any evidence to support a breach of contract cause of action.

The plaintiff invokes no law or evidence to support his claim that there was a contract, that Loyola breached the contract, or that the process afforded under the terms of Loyola's Code of Conduct was not provided to him.  By failing to identify a specific contractual promise that Loyola failed to honor, the plaintiff's conclusory submission fails to satisfy his burden of proof or identify any genuine factual controversy for trial.

A private university has "broad discretion in determining appropriate sanctions for violations of its policies." Doe v. Trustees of Boston College, 942 F.3d 527, 534-35 (1st Cir. 2019). Insofar as the relationship between student and private university

---

within 60 days from the complaint, its failure to provide notice of charges, its denial of meaningful right to counsel, its failure to provide opportunity for confrontation and cross-examination, its failure to meaningfully investigate or weigh evidence, its failure to provide unbiased and trained investigators and decisionmakers, and its failure to provide meaningful appellate review.

is contractual in nature, courts recognize that the university's regulations may become part of the contract.  See Shafiq v. Ochsner Health Sys., No. 18-8666, 2018 WL 1199755 (E.D. La. Mar. 13, 2019)(Africk, J.)(citing Guidry v. Our Lady of the Lake Nurse Anesthesia Program, 170 So. 3d 209, 213-14 (La. App. 1st Cir. 01/29/14)).   To state a breach of contract claim based on university regulations, "the plaintiff must do more than merely allege that a promise was inadequately performed; plaintiff must point to an identifiable contractual promise that the defendant failed to honor."  Id. at *10-11.  The Court then considers whether the university made an objective good faith effort to perform its contractual promise.  Id. at *11.  When reviewing a university's decision to dismiss a student, the Court should intervene only if an institution exercises its discretion in an "arbitrary or irrational fashion."  Guidry, 170 So. 3d at 215; see also Sirpal v. Univ. of Miami, 509 Fed.Apx. 924 (11th Cir. 2013)(applying Florida contract law and holding that a "court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes.").

Doe testified that Loyola's Code of Student Conduct formed a contract with him and acknowledged that, as a student, he had to

follow the rules "to continue being a student."  He stated that he disagreed with the rules.[14]  Nevertheless, he admitted that dating violence, of which he was twice found "responsible," would not be condoned by Loyola, violated the conduct policy, and would lead to disciplinary sanctions.  Doe does not debate that he had an opportunity to be heard after an investigation and during a hearing.  And he fails to identify any Code provision that Loyola disregarded in administering student discipline.  Doe simply disagrees with the outcome of his disciplinary proceeding.

Simply put, assuming that the student Code is part of a contract between Doe and Loyola, the plaintiff has failed to identify any breach.  He fails to submit any evidence (or support in the Code) indicating that he had a contractual right *not* to be dismissed from Loyola.  He fails to identify a specific contractual promise that Loyola failed to honor, and he fails to offer evidence indicating that Loyola acted arbitrarily or deviated from its own Code (the "contract").  He fails to offer evidence that would create factual disputes in the record, which shows that he was

---

[14] For example, Loyola's Code allows any person to submit a complaint against a member of the Loyola community, regardless of the complainant's affiliation with Loyola.  Doe takes issue with whether a university should allow non-students (Jane Roe 1 and Jane Roe 2) to lodge complaints about a student's (John Doe's) conduct.  Doe's subjective disagreement with university policy advances nothing on summary judgment.

dismissed from the University after being twice found responsible for dating violence, following an investigation and a hearing conducted in compliance with the Code of Conduct.  The material that the plaintiff attaches to his opposition paper appears to simply confirm that he and the female complainants had domestic disputes; that Doe communicated with university officials by email in connection with the student disciplinary process and his requests for extensions of time were generally granted and his requests for information were answered; that Doe was informed on June 13, 2017 that he would need to utilize a Dropbox link to access his case documents prior to the hearing; and that Doe first informed Loyola that he was unable to access the Dropbox link on August 11, 2017 (over one month after the hearing and two weeks after he submitted his appeal).  These materials create no triable issue regarding his breach of contract cause of action.  Having failed to identify any triable issue regarding whether Loyola breached a contract or violated its own student conduct policy or otherwise acted arbitrarily in dismissing Doe from the university, Doe's breach of contract claim fails to withstand Loyola's motion for summary judgment.

26

***

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion to extend discovery deadlines or for additional time to oppose summary judgment is hereby DENIED, and the defendant's motion for summary judgment is GRANTED. The plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana, March 3, 2020

_____

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE